IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| State Farm Mutual Automobile Insurance Company,<br><br>Plaintiff,<br><br>vs.<br><br>DuPont McWhite,<br><br>Defendant. | C/A No. 3:15-cv-4749-JFA<br><br><br>**ORDER** |

### I. Introduction

This matter is before the Court on Dupont McWhite's ("Defendant") motion to dismiss for lack of subject matter jurisdiction. ECF No. 9. State Farm ("Plaintiff") seeks a declaratory judgment as to whether it owes Defendant, its insured driver, underinsured motorist ("UIM") coverage under two policies. Defendant moved to dismiss this suit on the grounds that the parties are not diverse and that the amount in controversy has not been met. The matter has been fully briefed, and the Court held oral argument on Monday, March 14, 2016.

### II. Factual and Procedural History

This declaratory judgment action has its factual basis in an underlying state court suit for damages resulting from an automobile accident. There, Defendant was severely injured while driving his Ford Ranger in Lexington County in 2012. He brought suit against the at-fault driver. The at-fault driver's liability policy ("at-fault policy") paid out its limits of liability coverage in

1

the amount of $25,000. Defendant alleges that his damages are in excess of that amount and seeks UIM coverage from his own insurer, Plaintiff.

Plaintiff issued Defendant three automobile insurance policies: 1) a policy on his Ford Ranger ("Ranger policy") with liability limits of $25,000 and no UIM coverage; 2) a policy on his Toyota Highlander ("Highlander policy") with UIM coverage of $50,000; and 3) a policy on his Toyota CRV ("CRV policy") with UIM coverage of $50,000. At the time of the accident, Defendant was driving his Ford Ranger without UIM coverage.

Despite the absence of UIM coverage in the Ranger policy, the language of the policy provides that the insured can receive $25,000 of UIM coverage from one of the "at home" vehicles' policies. Thus, pursuant to that language, Plaintiff remitted to Defendant $25,000 in UIM coverage from the "at home" Highlander policy. This payment was made prior to the initiation of both the state and federal litigation.

In this action, Plaintiff seeks a declaration that no UIM coverage is available under the Ranger policy, that no stacking is permissible beyond that provided for in the policy language, and that if the Ranger policy is reformed to include UIM coverage, recovery be limited to $25,000 per vehicle. Defendant moved to dismiss for lack of subject matter jurisdiction claiming the amount in controversy is not in excess of $75,000.

### III.   Legal Standard

Federal courts are courts of limited jurisdiction and, as such, may only hear and decide cases when given the authority to do so by the United States Constitution and by federal statute. *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998).

In a motion to dismiss pursuant to Rule 12(b)(1), the burden rests with the plaintiff to prove that federal subject-matter jurisdiction is proper. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[T]he absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the evidence." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); *see Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

"Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure." *Lovern*, 190 F.3d at 654. The "district court may address its lack of subject matter jurisdiction in two ways." *Id*. It "may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)," or, "after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations." *Id*. (internal citations omitted); *see Adams*, 697 F.2d at 1219 (same).

**IV.   The Governing Law**

### A.  Diversity Jurisdiction

Under § 1332, district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332.

### 1.  Complete Diversity

It is a long-settled rule that in order to invoke diversity jurisdiction, the petitioner must show "complete diversity"—that is, that it does not share citizenship with any defendant. *Doctor's*

*Associates, Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) (*citing C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)).

Although the statute does not define citizenship, courts have held that it is the individual's domicile which is the state the individual considers her permanent home. *Gambelli v. United States*, 904 F. Supp. 494, 496 (E.D. Va. 1995) *aff'd*, 87 F.3d 1308 (4th Cir. 1996). Further, a corporation is deemed a citizen of every state in which it is incorporated and the state where is has its principal place of business. 28 U.S.C. § 1332(c)(1).

### *2. Amount in Controversy*

On a motion to dismiss an action based on diversity of citizenship for want of the requisite jurisdictional amount, the sum claimed by the plaintiff controls if the claim appears to be made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). However, if from the face of the pleading it is apparent to a legal certainty that there could be no recovery of the amount claimed, then the complaint will be dismissed. *Id*. at 289; *see also* 5 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1350 (3d ed.) ("[T]he claim is deemed to be made in good faith so long as it is not clear to a legal certainty that the claimant could not recover a judgment exceeding the statutorily mandated jurisdictional amount, a matter on which the party challenging the district court's jurisdiction has the burden.").

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Where the lawsuit seeks a declaration of no liability, the value of the relief sought is measured by the value of the liability that would follow if liability were found to exist. *See e.g., Budget Rent–A–Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th

Cir. 1997) (finding the maximum liability under a rental agreement is "relevant to determining the amount in controversy only if the validity of the entire insurance policy is at issue"); *Biotronik, Inc. v. Medtronic USA, Inc.*, 840 F. Supp. 2d 1251, 1257 (D. Or. 2012) (same); *Matsuda v. Wada*, 128 F. Supp. 2d 659, 663–64 (D. Haw.2000); 14A Wright, Miller, et al, § 3708 ("with regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the liability of the legal claim to be declared").

In declaratory actions filed by insurers, the maximum "amount in controversy" necessary for diversity jurisdiction is the maximum limit of the insurer's liability under the policy. *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269 (10th Cir. 1998). "Generally, where an automobile liability policy is involved in proceedings for declaratory judgment, the 'amount in controversy' for jurisdictional purposes is the maximum amount for which the insurer could be held liable under the policy." *Morgan v. Liberty Mut. Ins. Co.*, 261 F. Supp. 709, 712 (D.S.C. 1966); *see also Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 784 (E.D. Ky. 2008) (holding that "the policy limits should not control when the entirety of the policy is not 'in dispute,' but rather only a claim on that policy.").

### B. South Carolina Automobile Insurance Law

This Court must apply South Carolina's substantive law in resolving this diversity action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938).

In South Carolina, an insurer is obligated to offer "at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage." S.C. Code Ann. § 38-77-160. In the absence of a meaningful offer, the court will reform an automobile insurance policy to afford coverage up to the limits of the insured's liability coverage. *State Farm Mut. Auto. Ins. Co. v.*

5

*Wannamaker*, 354 S.E.2d 555 (S.C. 1987) (expressly adopting *Hastings v. United Pacific Ins. Co.*, 318 N.W.2d 849 (Minn.1982)).

UIM coverage follows the individual insured rather than the vehicle insured; thus, UIM coverage, like UM, is "personal and portable." *Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 399, 728 S.E.2d 477, 480 (2012) (*quoting Burgess v. Nationwide Mut. Ins. Co.*, 373 S.C. 37, 41, 644 S.E.2d 40, 42 (2007)).

Additionally, an insured may "stack" coverages from multiple automobile policies. *See Giles v. Whitaker*, 297 S.C. 267, 268, 376 S.E.2d 278, 279 (1989). "Stacking is defined as the insured's recovery of damages under more than one policy until all of his damages are satisfied or the limits of all available policies are met." *Id*.

However, an insured may only stack UIM coverage "from other policies in an amount equal to the coverage on the car involved in the accident." § 38-77-160; *see generally Gambrell v. Travelers Ins. Co.'s*, 280 S.C. 69, 310 S.E.2d 814 (1983); *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 311 S.E.2d 723 (1984); *Nationwide Mut. Ins. Co. v. Howard*, 288 S.C. 5, 339 S.E.2d 501 (1985); *and S. Carolina Farm Bureau Mut. Ins. Co. v. Mooneyham*, 304 S.C. 442, 405 S.E.2d 396 (1991).

**V.     Discussion**

        ***A.     Complete Diversity of the Parties***

In this case, the parties are diverse because Plaintiff is a citizen of Illinois and Defendant is a citizen of South Carolina.

The parties agree that Defendant is a citizen of South Carolina. However, they disagree as to Plaintiff's citizenship. Plaintiff properly alleges that it is a citizen of Illinois because it is both

6

incorporated there and maintains its principal place of business there. ECF No. 1. Defendant argues that because Plaintiff "owns real property, maintains numerous agents, employees, and offices from which it conducts its business operations in the State of South Carolina" that Plaintiff is a citizen of South Carolina. ECF No. 9.

Defendant confuses the Constitutional considerations affecting the exercise of *personal* jurisdiction with the related considerations of diversity citizenship affecting the exercise of *subject matter* jurisdiction. The Court has no reason to doubt the Plaintiff's allegations concerning its state of incorporation and the location of its principal place of business.[1]

Accordingly, the Court finds the parties to be diverse.

### B.     Amount in Controversy

The $75,000 amount in controversy requirement is not met in this case because there is a legal certainty that Plaintiff's liability is, at the most, $50,000.

#### 1. UIM Coverage

First, the parties agree that Defendant's Ranger policy, on its face, did not have UIM coverage. However, that policy nonetheless entitled Defendant to $25,000 of UIM coverage from one of his two "at home" vehicles that did have UIM coverage. Pursuant to that policy language, Defendant received $25,000 from the Highlander policy.[2] ECF. No. 16-2.

Next, for this motion, the Court must assume that Plaintiff's offer of UIM coverage on the Ranger policy failed the test laid out by the South Carolina Supreme Court in *Wannamaker*. Hence,

---

[1] At oral argument, defense counsel essentially ceded this point.
[2] The parties do not dispute the validity of this payment. Thus, the Court will not include the payment as part of the "amount in controversy." Nevertheless, the Court notes that, even if it was taken into consideration, the result would be the same. Exactly $75,000 is still a single penny shy of the jurisdictional requirement.

this Court would look to reform that policy to include UIM coverage to the extent of the liability coverage on that vehicle. Here, Defendant had liability coverage at the minimum limits of $25,000. Thus, by operation of law, Defendant would be entitled to $25,000 of UIM coverage from the Ranger policy.

Additionally, because UIM coverage is personal and portable, Defendant could seek damages under other policies until his damages were satisfied or the limits of the available policies were met. Here, Plaintiff already paid and Defendant already received $25,000 under the Highlander policy. Thus, Defendant could now look only to the CRV policy, which had UIM limits of $50,000.

However, Defendant's recovery under the CRV policy is limited by the amount of UIM coverage available on the Ford Ranger – the "measuring vehicle." Because the Court reformed the Ranger policy to include only the minimum limits of $25,000, Defendant could only recover $25,000 from the $50,000 CRV policy.

Therefore, under the three policies, Plaintiff's maximum potential liability is $50,000 or $25,000 from the reformed Ranger policy stacked with $25,000 from the CRV policy.

### 2. *Attorney's Fees*

In its complaint, Plaintiff seeks attorney's fees "for defending the underlying case and prosecuting this declaratory action." ECF No. 1.

Generally, attorney's fees are not included in the amount in controversy calculation, but courts have created two exceptions to this rule: "(1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees." 15–102 Moore's Federal Practice, Civil § 102.106(6)(a); *see also Francis v. Allstate Ins. Co.*, 709 F.3d 362 (4th Cir. 2013).

Here, neither party suggests either a contractual obligation to pay attorney fees or a statutory authorization providing for their collection. Further, this case is readily distinguishable from the case cited by Plaintiff, *Francis v. Allstate*, *supra*. There, the dispute involved the scope of the insurer's duty to defend under Maryland law. Here, the only dispute is the extent of the insurer's liability under the two policies.

Accordingly, the Court will not include attorney's fees in its calculation of the amount in controversy.

## VI.   Conclusion

Based on the aforementioned case law, the amount in controversy does not exceed the $75,000 threshold. Rather, "the value of the object of the litigation" is $50,000 and thus, less that the jurisdictional requirement. Accordingly, it is hereby ordered that Defendant's Motion to Dismiss (ECF No. 9) is **GRANTED**, and this action is **DISMISSED**.

**IT IS SO ORDERED.**

March 28, 2016                                                              Joseph F. Anderson, Jr.
Columbia, South Carolina                                          United States District Judge